**Civ. No. 22-cv-01371-CFC**

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---

**In re ABEINSA HOLDING INC., Case No. 16-10790 (LSS)**

**-----------------------------------------**

**Adv. Pro. No. 18-50316 (LSS)**

**-----------------------------------------**

**DRIVETRAIN, LLC, as LITIGATION TRUSTEE,**
***Appellant*,**

**v.**

**CROWN FINANCIAL, LLC,**

***Appellee*.**

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

**APPELLANT'S OPENING BRIEF ON APPEAL**


**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 N. Market Street
PO Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
E-mail:rdehney@morrisnichols.com
aremming@morrisnichols.com
mtalmo@morrisnichols.com

**HOGAN LOVELLS US LLP**
David Dunn (*pro hac vice* forthcoming)
Allison Wuertz (*pro hac vice* forthcoming)
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
E-mail: david.dunn@hoganlovells.com
allison.wuertz@hoganlovells.com

*Counsel to Drivetrain, LLC as Litigation Trustee*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>**ABEINSA HOLDING INC., *et al.***,<br>Reorganized and Liquidating Debtors.[1] | Chapter 11<br>Case No. 16-10790 (LSS)<br>(Jointly Administered) |
| **ABEINSA LITIGATION TRUST**,<br>Plaintiff,<br>v.<br>**CROWN FINANCIAL, LLC**,<br>Defendant. | Adversary Proceeding<br>Case No. 18-50316 (LSS) |
| **DRIVETRAIN, LLC, as LITIGATION TRUSTEE**,<br>Appellant,<br>v.<br>**CROWN FINANCIAL, LLC**,<br>Appellee. | Civil Action No. 22-cv-01371-CFC |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Drivetrain, LLC, solely in its capacity as litigation trustee of the Abeinsa Litigation Trust (the

1 The Reorganized Debtors in these chapter 11 cases, together with the last four digits of each Reorganized Debtor's federal tax identification number, are as follows: Abeinsa Holding Inc. (9489); and Abengoa Solar, LLC (6696). The Liquidating Debtors in these chapter 11 cases, together with the last four digits of each Liquidating Debtor's federal tax identification number, are as follows: Inabensa USA, LLC (2747); and Abengoa Bioenergy Holdco, Inc. (8864).

"Litigation Trust") appointed on behalf of the EPC Reorganizing Debtors, states as follows: the Litigation Trust has no parent corporation, and no publicly held corporation owns 10% or more of any Trust stock. The Trust was created pursuant to the *Debtors' Modified First Amended Plans of Reorganization and Liquidation* [A105-A190] and *Order Confirming Debtors' Modified First Amended Plans of Reorganization and Liquidation* [A061-A104], which went into effect on March 31, 2017.

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)
1201 N. Market Street
PO Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
E-mail: rdehney@morrisnichols.com
aremming@morrisnichols.com
mtalmo@morrisnichols.com

**HOGAN LOVELLS US LLP**
David Dunn (*pro hac vice* forthcoming)
Allison Wuertz (*pro hac vice* forthcoming)
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
E-mail: david.dunn@hoganlovells.com
allison.wuertz@hoganlovells.com

Dated: December 15, 2022

*Counsel to Drivetrain, LLC as Litigation Trustee*

# TABLE OF CONTENTS


CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES .......... vi

INTRODUCTION .......... 1

STATEMENT OF APPELLATE JURISDICTION .......... 3

STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW .......... 4

STATEMENT OF THE CASE .......... 5

I. STATEMENT OF FACTS .......... 5

II. PROCEDURAL HISTORY .......... 7

A. The Bankruptcy Proceedings .......... 7

B. The Crown Claim .......... 8

C. The Adversary Proceeding .......... 10

SUMMARY OF THE ARGUMENT .......... 11

I. THE BANKRUPTCY COURT ERRED IN FINDING THAT THE LITIGATION TRUSTEE COULD NOT PROCEED AGAINST CROWN UNDER SECTION 7031(B) AND IN IGNORING CRITICAL PUBLIC POLICY IMPLICATIONS. .......... 13

A. The Bankruptcy Court's Incomplete Analysis Ignores Crown's Role as Assignee of Synflex. .......... 13

B. The Bankruptcy Court's Public Policy Analysis Is Wrong .......... 15

II. THE BANKRUPTCY COURT WRONGLY FOUND THAT THE CALIFORNIA UNIFORM COMMERCIAL CODE PRECLUDED THE LITIGATION TRUSTEE'S ABILITY TO RECOVER FROM CROWN AMOUNTS PAID DIRECTLY TO CROWN. .......... 20

III. THE BANKRUPTCY COURT ERRED IN FINDING THAT THE LITIGATION TRUSTEE CANNOT MAINTAIN A CLAIM FOR TURNOVER UNDER THE BANKRUPTCY CODE....................................22

CONCLUSION....................................25

CERTIFICATE OF COMPLIANCE WITH TYPE-FACE REQUIREMENT AND TYPE-VOLUME LIMITS....................................27

CERTIFICATE OF SERVICE....................................28

# TABLE OF AUTHORITIES

## Cases

*Alatriste v. Cesar's Exterior Designs, Inc.*,
108 Cal. Rptr. 3d 277 (Cal. Ct. App. 2010).....19

*Am. Home Mortg. Corp. v. Showcase of Agents, LLC (In re Am. Home Mortg. Holding*),
458 B.R. 161 (Bankr. D. Del. 2011).....23

*Azzali v. Minert (In re DBSI)*,
468 B.R. 663 (Bankr. D. Del. 2011).....23

*Hydrotech Sys., Ltd. v. Oasis Waterpark*,
803 P.2d 370 (1991) ..... 16-17

*In re Fleming Cos., Inc.*,
No. 03-10945(MFW), 2004 WL 385517 (Bankr. D. Del. Feb. 27, 2004), *subsequently aff'd*, 499 F.3d 300 (3d Cir. 2007) .....14

*Kim v. TWA Constr., Inc.*,
78 Cal. App. 5th 808 (Cal. Ct. App. 2022).....18

*LNV Corp. v. Ad Hoc Grp. of Second Lien Creditors* (*In re La Paloma Generating Co., LLC*),
Adv. Pro. No. 19-50110 (JTD), 2020 WL 224569 (Bankr. D. Del. Jan. 13, 2020) .....5

*Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*,
247 F.3d 44 (3d Cir. 2001) .....14, 25

*Newman v. Tybert (in re Steel Wheels Transport, LLC*,
Adv. No. 07-02676 DHS, 2011 WL 5900958 (Bankr. D.N.J. Oct. 28, 2011) .....23

*SG Blocks, Inc. v. HOLA Cmty. Partners*,
No. 220CV03432ODWRAOX, 2022 WL 7054907 (C.D. Cal. Oct. 12, 2022) .....18

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960 (2018) .................... 4-5

*White v. Cridlebaugh*, 100 Cal. Rptr. 3d 434 (Cal. Ct. App. 2009) .................... 20

**Federal Statutes**

11 U.S.C. § 542(a) .................... *passim*

28 U.S.C. § 158(a)(1) .................... 4

**State Statutes**

Cal. Bus. & Prof. Code § 7031 .................... *passim*

Cal. U.C.C. § 9-404 .................... *passim*

**Federal Rules**

Fed. R. Bankr. P. 8002(a)(1) .................... 4

Fed. R. Bankr. P. 8003 .................... 4

# INTRODUCTION

This appeal arises from claims brought by Drivetrain, LLC, as Litigation Trustee, against Crown Financial, LLC ("Crown") for amounts that Abener Teyma Mojave General Partnership ("ATMGP") paid to Crown on account of invoices that Synflex Insulation, LLC ("Synflex") assigned to Crown. The key facts are not in dispute: this Court previously decided that (1) Synflex was unlicensed when it performed work on the Mojave Project (the "Project'), (2) the Synflex invoices were and are void under California law due to Synflex's non-licensure, (2) ATMGP paid over $3 million to Crown on account of invoices Synflex assigned to Crown. A195-A204.

Based on these facts, the Litigation Trustee brought claims under Section 7031(b) of the California Business and Professions Code ("Section 7031(b)") and for turnover pursuant to Section 542(a) of the Bankruptcy Code ("Section 542(a)") to recover the $3,575,828.39 ATMGP paid to Crown. However, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in its October 6, 2022 Opinion and Order (the "Opinion" or "Op."), found that the Litigation Trustee could not maintain a claim under Section 7031 or under Section 542(a). This Court should reverse the Bankruptcy Court's Opinion because the Bankruptcy Court committed legal error in granting summary judgment in favor of Crown. This Court should reverse the Bankruptcy Court's Opinion for three reasons.

First, contrary to the Bankruptcy Court's Opinion, the Litigation Trustee may proceed against Crown, as assignee of Synflex, even though Crown was not the unlicensed subcontractor that performed the relevant work. As assignee, Crown stands in the shoes of Synflex with respect to each of the invoices Synflex assigned to Crown, including for purposes of Section 7031(b). If the Litigation Trustee cannot pursue Crown directly for disgorgement of amounts ATMGP paid directly to Crown on account of void invoices, it will undermine California's strong public policy encapsulated in Section 7031(b) and permit unlicensed contractors to end run Section 7031(b) through transfers, assignments, or factoring.

Second, the Bankruptcy Court wrongly concluded that Section 9-404 of the California Uniform Commercial Code ("Section 9-404") barred the Litigation Trustee's ability to recover from Crown amounts paid to Crown. The Opinion fails to recognize that, while Crown is the proper target of a 7031(b) claim because it is Synflex's assignee, the Litigation Trustee seeks recovery of amounts ATMGP paid directly to Crown, not amounts paid to, or otherwise transferred through, Synflex.

Third, the Bankruptcy Court erred in granting Crown summary judgment on the Litigation Trustee's turnover claim. The Bankruptcy Court tied the Litigation Trustee's Section 7031(b) claim to its Section 542(a) claim, concluding the Litigation Trustee cannot succeed on the turnover claim because the Litigation Trustee is not "entitle[d] to the funds based on § 7031(b)." The Bankruptcy Court

is wrong because the two claims are separate and distinct, and the Litigation Trustee seeks turnover of amounts paid to Crown because ATMGP paid those amounts on account of void invoices, and those payments for no consideration simply are estate property recoverable from Crown under 542(a). Moreover, even if the two claims were somehow related, the Litigation Trustee can succeed on its turnover claim because the Bankruptcy Court is incorrect that the Litigation Trustee cannot maintain a claim against Crown under Section 7031(b). Any alternative conclusion would grant Crown, as assignee, greater rights than Synflex, an assignor.

This Court should reverse the decision of the Bankruptcy Court and enter an order granting summary judgment in favor of the Litigation Trustee on all counts.

## STATEMENT OF APPELLATE JURISDICTION

The Bankruptcy Court had jurisdiction over this matter and the judicial authority to enter into a final order pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1). The Opinion was entered on the docket in the Bankruptcy Court on October 6, 2022. *See* A408-A424 (Opinion); A425-A426 (Order).[2] The Opinion was a final order. The Trustee filed a notice of appeal under 28 U.S.C. § 158(a)(1) and Federal Rules of Bankruptcy Procedure 8002(a)(1) and 8003 on October 18, 2022. *See*

2 Citations preceded by "D.I." are to the docket in the bankruptcy adversary proceeding underlying this appeal, *Abeinsa Litigation Trust et al. v. Crown Financial LLC*, 18-ap-50316 (Bankr. D. Del.).

A427-A451. This Court has jurisdiction over Crown's appeal pursuant to 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

***Issues Presented on Appeal***

1. Whether the Bankruptcy Court erred in granting summary judgment in favor of Crown because it found that California Business & Professions Code § 7031(b) does not authorize the Litigation Trustee to recover against Crown, as Synflex's factor;

2. Whether the Bankruptcy Court erred in concluding that Section 9404(b) of the California Uniform Commercial Code bars the Litigation Trustee's claim against Crown; and

3. Whether the Bankruptcy Court erred in concluding that the Litigation Trustee was not entitled to turnover of amounts a debtor paid to Crown on account of void Synflex Invoices.

***Standard of Review on Appeal***

A bankruptcy court's legal conclusions are reviewed *de novo*, and its "factual findings are reviewable only for clear error – in other words, with a serious thumb on the scale for the bankruptcy court." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018). Here, all of the issues on appeal raise questions of law that must be reviewed *de novo.*

In addition, this Court already has decided most of the key factual and legal issues relevant to this appeal. *See* A195-A204 ("Claims Litigation"). Under the law of the case doctrine, this Court should be guided by the findings of fact and conclusions of law in that prior decision. *LNV Corp. v. Ad Hoc Grp. of Second Lien Creditors* (*In re La Paloma Generating Co., LLC*), Adv. Pro. No. 19-50110 (JTD), 2020 WL 224569, at *3 (Bankr. D. Del. Jan. 13, 2020) ("The law of the case doctrine bars the re-litigation of matters once decided during the course of a continuing lawsuit. The doctrine applies to subsequent rulings by the same judge in the same case or a closely related one and to rulings by different judges at the same level. The doctrine [also] applies to . . . findings made in a main bankruptcy proceeding and is binding on parties to a subsequent adversary proceeding." (internal quotation marks and citations omitted)).

This Court's decision in the related Claims Litigation was affirmed on appeal by the Third Circuit, and thus there is no question that the findings and conclusions in that opinion are law of the case.

## STATEMENT OF THE CASE

### I. STATEMENT OF FACTS

ATMGP served as the general contractor at the Mojave Solar Power Plant Project (the "Project") in San Bernardino County, California. ATMGP subcontracted with Synflex to supply and install insulation and other materials

pursuant to three written subcontract agreements with ATMGP. *See* A241-A249 (relevant excerpts from contract dated September 19, 2013), A250-A255 (relevant excepts from contract dated October 7, 2013); A256-A263 (relevant excerpts from contract dated December 10, 2013).[3] Each of these agreements contained an express written provision that required Synflex to maintain a license to perform the work contracted for in accordance with California law. *See* A246; A254; A261. It is undisputed that Synflex was unlicensed at all material times, including when it performed work on the Project.

**Crown Factors Synflex's Invoices**

Synflex and Crown entered into an Account Purchase Agreement on or about April 4, 2014 (the "APA"), pursuant to which Synflex submitted its accounts in the form of invoices to Crown for review. *See* A267-A273. Pursuant to the APA, after Synflex provided invoices for its review, Crown could accept assignment of whichever of those invoices it chose. A267-A268.

Crown sent a letter, dated April 3, 2014, to ATMGP (the "Assignment Notice"). A275-A294. The Assignment Notice stated that Synflex "ha[d] assigned

[3] The complete Synflex agreements are available at D.I. 1747-1, 1747-2, and 1747-3 in the main bankruptcy proceeding, *In re Abeinsa Holding Inc.*, Case No. 16-10790. Citations to the main bankruptcy are preceded by "Main Docket D.I." All other citations are to the adversary proceeding underlying this appeal.

all rights, title, and interest in its accounts receivable to Crown" and then requested that ATMGP do two things. A275. First, to change wiring instructions to send payments already due to Synflex to Crown. *Id*. Second, to confirm that certain invoices listed in an attachment were "in line for payment and the payment obligation of [ATMGP] is not subject to any offsets, back charges, or disputes of any kind or nature." *Id.*

Crown alleges that it purchased 45 invoices from Synflex, all of which Crown submitted to ATMGP via multiple documents Crown titled as "Exhibit A" to the APA. *See* A346-A370.

Pursuant to the APA, Synflex assigned Crown invoices totaling $5,415,286.76. *Id.* Before its bankruptcy filing, ATMGP directly paid Crown $3,575,828.39 on account of Synflex invoices assigned to Crown and submitted to ATMGP for payment by Crown. A223.

## II. PROCEDURAL HISTORY

### A. The Bankruptcy Proceedings

Beginning on March 29, the Debtors commenced chapter 11 cases by filing voluntary petitions for relief under the Bankruptcy Code. *See* A410. The Debtors were organized into four groups: (i) the EPC Reorganizing Debtor Group (which includes ATMGP); (ii) the Solar Reorganizing Debtor Group; (iii) the EPC Liquidating Debtor Group; and (iv) the Bioenergy and Maple Liquidating Debtor

Group. A063. Each group had its own reorganizing or liquidating plan. *Id.* On December 15, 2016, the Bankruptcy Court entered the Order Confirming Debtors' Modified First Amended Plans of Reorganization and Liquidation. A061-A190; A410-A411. The plans became effective on March 31, 2017. A411. As of that date, the Debtors' chapter 11 cases were partially substantively consolidated.[4]

As part of the reorganization plan, Drivetrain was named as Litigation Trustee for certain claims related to the EPC Reorganizing Debtors. *See* A296-A343 (Lit. Trust Agreement). The Litigation Trustee was given responsibility for, among other things, "investigating, prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action." A300. "Litigation Trust Causes of Action" include "[a]ll causes of action, claims, and counterclaims in any actions, mediations, arbitrations, and other proceedings with respect to Distribution International, Crown Financial Group, Inc., Crown Solutions Company, and any related subsidiaries and affiliates." A335.

**B. The Crown Claim**

On June 20, 2016 Crown filed a Proof of Claim against ATMGP for $2,022,527.29. *See* A346-A370 (Claim No. 114). The Litigation Trustee objected to Crown's claim, including because Synflex was unlicensed and thus the invoices

---

4 The Debtors' other chapter 11 cases were closed on May 3, 2017. *See* A192-194.

it issued, and some of which it factored to Crown, were void. A411. Synflex also filed a Proof of Claim against ATMGP in the amount of $11,192,133.12 for unpaid invoices, many of which overlapped with invoices that Crown asserted as the basis for its claim. *See* A372-A380 (Claim No. 302). The Responsible Person, acting for the Reorganized Debtor, objected to Synflex's claim. A411.

Following discovery, including the exchange of documents and depositions, an in-person hearing, and post-hearing briefing, on March 26, 2019, the Bankruptcy Court issued an opinion and order sustaining the Litigation Trustee's objections to both the Synflex and Crown claims. *See* A411-412. The Bankruptcy Court found that all the Synflex invoices were void and Synflex had no claim or entitlement to payment. A411. It further found that Crown was an assignee of certain of these void invoices and that its rights were limited to those of an assignee. *Id.* Because the underlying invoices were void, Crown, as Synflex's assignee, had no entitlement to payment on any Synflex invoices that had been assigned to Crown. *Id.*[5] The decision of the Bankruptcy Court was appealed to this Court and to the Third Circuit, and affirmed both times. *See* A195-A204; A205-A215.

---

5 The Court found the question of whether Crown had an independent contract with ATMGP to be irrelevant given that the underlying Synflex invoices were void. A412.

### C. The Adversary Proceeding

While the parties were litigating the validity of Synflex's and Crown's claims, the Litigation Trustee filed this adversary proceeding against Crown. The adversary proceeding alleges four claims: (1) disallowance of Crown's claim; (2) turnover of the $3,575,828.39 ATMGP paid to Crown; (3) violation of Section 7031; and (4) statutory disgorgement pursuant to Section 7031(b). The Complaint seeks disallowance of Crown's claim, a declaration that the Synflex invoices are void, and a money judgment against Crown in the amount of no less than $3,575,828.39.

Crown and the Litigation Trustee filed cross-motions for summary judgment in May 2020. On October 6, 2022, the Bankruptcy Court issued the Opinion underlying this appeal. In the Opinion, the Bankruptcy Court granted summary judgment in favor of Crown, finding that the Litigation Trustee could not proceed against Crown to recover amounts ATMGP paid directly to Crown because "the California statute does not authorize a suit against any party other than the unlicensed contractor, and/or because a suit against an assignee of commercial paper cannot seek affirmative recoveries." A409. The Bankruptcy Court also granted summary judgment in favor of Crown on the Litigation Trustee's turnover claim, finding that "because its turnover action is based on its state law claim, Plaintiff does not prevail on that theory either." *Id.*

The Litigation Trustee timely filed a notice of appeal on October 18, 2022.

## SUMMARY OF THE ARGUMENT

This Court should reverse the Bankruptcy Court's Opinion because the Bankruptcy Court committed legal error in granting summary judgment in favor of Crown. The Bankruptcy Court wrongly decided each of three legal issues:

First, the Bankruptcy Court wrongly concluded that Section 7031(b) is unavailable because Crown itself was not the unlicensed subcontractor that performed the work on the Project. Crown, as the assignee of Synflex, stands in the shoes of Synflex with respect to each of the invoices Synflex assigned to Crown. As a result, Crown stands in the shoes of Synflex for the purposes of Section 7031(b) and is the proper target of a suit to recover amounts paid directly to Crown on the basis of invoices that are and were when paid void pursuant to Section 7031(a). Any other result would undermine the strong public policy underlying Section 7031(a) and present a loophole for all unlicensed contractors – they could simply transfer, assign, or factor their invoices and free themselves of the penalties associated with their non-licensure.

Second, the Bankruptcy Court wrongly interpreted and applied California U.C.C. Section 9404. The Bankruptcy Court concluded that "any claim against Crown can only be made as Synflex's assignee of the invoices," but did not recognize the difference between the mechanism underlying the Litigation Trustee's claim (Section 7031(b) against Crown, assignee of Synflex) with the basis for the

Litigation Trustee's claim (the Litigation Trustee seeks recovery of amounts ATMGP paid directly to Crown, not amounts paid to Synflex). A419.

Third, the Bankruptcy Court erred in finding that the Litigation Trustee could not maintain its turnover claim. The Bankruptcy Court concluded that, because the Litigation Trustee is not "entitle[d] to the funds based on § 7031(b)," it is not entitled to turnover under Section 542(a).[6] A423. However, the Bankruptcy Court is wrong, as discussed above, that the Litigation Trustee cannot maintain a claim against Crown under Section 7031(b). Regardless of that error, however, because the invoices upon which ATMGP paid Crown are void as a matter of law, the Trustee seeks recovery from Crown of amounts wrongfully transferred to Crown – not recovery for amounts paid to Synflex. The Bankruptcy Court's conclusion affords Crown, as assignee, greater rights than Synflex would have, in contravention of black letter law.

This Court should reverse the decision of the Bankruptcy Court and enter an order granting summary judgment in favor of the Litigation Trustee on all counts.

---

6 The Bankruptcy Court did not analyze the other elements of a turnover claim: (1) the property is in the possession, custody, or control of another entity; and (2) the property can be used in accordance with the provisions of section 363. For the reasons explained in the Litigation Trustee's summary judgment briefing, both of these elements have been met. A216-A238.

## ARGUMENT

### I. THE BANKRUPTCY COURT ERRED IN FINDING THAT THE LITIGATION TRUSTEE COULD NOT PROCEED AGAINST CROWN UNDER SECTION 7031(B) AND IN IGNORING CRITICAL PUBLIC POLICY IMPLICATIONS.

In the Opinion, the Bankruptcy Court found that "subsection (b) [of Section 7031] does not name any wrongdoer other than the unlicensed contractor" and that "[o]n the face of the statute, subsections (a) and (b) provide Plaintiff with a defense to claims brought by Synflex and a disgorgement action against Synflex . . . but no defense or remedy against Crown, the factor." A417. The Bankruptcy Court erred in reaching this conclusion because it ignored that Crown received the payments sought to be disgorged from ATMGP in Crown's capacity as assignee of Synflex. In addition, the Bankruptcy Court failed to give effect to the plain and strong public policy implications of permitting Crown to keep money that it was paid on account of invoices that were void as a matter of law because the work underlying them was performed by an unlicensed contractor.

#### A. The Bankruptcy Court's Incomplete Analysis Ignores Crown's Role as Assignee of Synflex.

The Bankruptcy Court's analysis of Section 7031 is incomplete: it notes the plain language of Section 7031(a) and (b), reviews the prior decisions by the bankruptcy court, district court, and court of appeals, all of which found that Section 7031(a) applied to Crown, as assignee of Synflex, and then pivots immediately to an

analysis of Section 9404, without considering or evaluating Crown's status as an assignee and how it affects the interpretation of Section 7031(b).

This Court should find that Crown's status as Synflex's assignee makes Crown a proper defendant in a claim under Section 7031(b). That is exactly what this Court, and the Court of Appeals, did when previously analyzing Section 7031(a) and affirming the disallowance of Crown's bankruptcy claim. The assignment of invoices from Synflex to Crown means that, for the purposes of payment of the invoices, Crown is Synflex. *See, e.g.*, *In re Fleming Cos., Inc.*, No. 03-10945(MFW), 2004 WL 385517, at *2 (Bankr. D. Del. Feb. 27, 2004), *subsequently aff'd*, 499 F.3d 300 (3d Cir. 2007) (quoting *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001)) ("An assignment is intended to change only who performs an obligation, not the obligation to be performed."). Indeed, Crown has repeatedly relied on its status as assignee: first, when it filed its claim and demanded payment on account of Synflex's assignment of Synflex invoices, and second, when it attempts to invoke Section 9-404, which expressly addresses the "rights of an assignee." With respect to Section 7031(b), however, Crown changes position, and seeks to avoid the consequences of its assignee status. It seeks instead to retain the windfall of $3,575,828.39 that it was paid directly by ATMGP for invoices that were at the time of payment, and remain now, void as a matter of California law and as a matter of law of the case in this

matter. *See* A203 (finding that "Synflex's invoices to ATMGP were void as a matter of law")).

The Bankruptcy Court's decision permits Crown to cherry pick when it should be treated as an assignee. This Court should reverse the Bankruptcy Court's opinion and find that Crown, as assignee of Synflex, must disgorge amounts paid to it on account of invoices assigned to it that, were and are indisputably and inarguably void – and were so at the time payment was made.

**B. The Bankruptcy Court's Public Policy Analysis Is Wrong**

The Bankruptcy Court erred in rejecting the Litigation Trustee's argument that its failure to extend Section 7031(b) to assignees undermines California's strong public policy disfavoring unlicensed contractors. The Bankruptcy Court found instead that "there is ample protection against unlicensed contractors factoring all their invoices." A421. The Bankruptcy Court noted specifically that the risk of nonpayment was enough to deter factors from engaging with unlicensed contractors and that allowing recovery from an assignee will not deter the unlicensed assignor, who already has been paid.

The Bankruptcy Court's analysis ignores two key elements of the public policy concerns that California's courts and its legislature have plainly articulated. First, the Bankruptcy Court's argument that nonpayment alone is enough of a deterrent is contravened by the plain language and structure of Section 7031.

California's legislature enacted both 7031(a) and 7031(b), permitting non-payment and disgorgement, respectively, to discourage contractors from performing work without appropriate licenses. The very existence of Section 7031(b) demonstrates conclusively that California's legislature determined that non-payment, alone, was insufficient deterrent for unlicensed contractors. The same logic should be applied to assignees – if, as established in the prior law of the case here, an assignee is barred from recovery by section 7031(a), it should similarly be subject to disgorgement for payments under Section 7031(b).

Second, Section 7031 concerns licensure, not payment. Section 7031 uses non-payment and disgorgement as tools to compel compliant licensing, but the underlying goal is to ensure that contractors are licensed, which in turn ensures that contractors are performing competent and safe work. *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 803 P.2d 370, 374 (1991) ("The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." (internal citation omitted)).

To serve this goal, California's courts and its legislature have consistently expanded and broadly construed the circumstances in which Section 7031 applies.

*Hydrotech Systems* provides the most notable example of California's commitment to its public policy. 803 P.2d at 376. There, the California Supreme Court found that – even if an owner knew of a contractor's unlicensed status, the owner told the contractor to perform the work anyway and assured the contractor that it would be paid, and then, in bad faith, refused to pay the contractor because it was unlicensed – an unlicensed contractor is still subject to Section 7031. *Id.* at 372-76. That California enforces Section 7031, despite actual bad faith by the beneficiaries, demonstrates that the Bankruptcy Court erred in concluding that California would not find the enforcement of Section 7031(b) against an assignee to serve its desired public policy.

Further, illustrative of the breadth of the underlying policy, a California court recently found Section 7031 to bar a "licensed general contractor in California from bringing an action for compensation for an act or contract performed by an unlicensed subcontractor where a license is required." *Kim v. TWA Constr., Inc.*, 78 Cal. App. 5th 808, 831 (Cal. Ct. App. 2022) (emphasis added). In that case, the owners of a property hired a general contractor, TWA, which in turn hired a subcontractor, an individual named Hoffman, to remove a tree from the property. *Id.* at 817-18. Hoffman, the sub-contractor, was allegedly unlicensed, though TWA, the general contractor, itself was licensed. *Id.* at 825. Amidst litigation by a neighbor against the property owners and TWA for negligence and trespass, TWA

filed a cross-claim against the property owners for breach of contract seeking damages, including lost profits. The trial court found that Section 7031 barred TWA from recovering because Hoffman, the subcontractor, was unlicensed, and the appellate court affirmed. *Id.* at 819-20.

Another California court also recently found that Section 7031 barred an express indemnity claim by an unlicensed contractor. *See generally SG Blocks, Inc. v. HOLA Cmty. Partners*, No. 220CV03432ODWRAOX, 2022 WL 7054907 (C.D. Cal. Oct. 12, 2022). There, the court found that "compensation" in Section 7031(a) "should not be narrowly construed" and found "payments pursuant to an express indemnity provision" to be "compensation" an unlicensed contractor could not obtain due to Section 7031(a). *Id.* at *4.

It is consistent with California public policies, and the logic of California courts who consistently read Section 7031 broadly, to subject assignees to disgorgement under Section 7031(b) to further disincentivize non-compliance with licensing requirements. If an unlicensed contractor knows that it can factor its invoices, the threats of non-payment and disgorgement are removed and an unlicensed contractor will have fewer qualms about performing unlicensed work. But a factoring relationship takes two parties: if potential factors know that money they are paid on account of invoices from an unlicensed contractor are subject to non-payment and <u>disgorgement</u>, factors will be further incentivized (1) not to deal

with unlicensed contractors and (2) to verify that those they factor are licensed, furthering California's public policy. The facts here are illustrative. Plainly, Crown was not sufficiently motivated to inquire about Synflex's licensure status—or its compliance with its licensing obligation under its own contract. Application of disgorgement under Section 7031(b) serves the purpose and policy of the statute to require such inquiry – by making clear that a factor who acquires void invoices acts at its financial peril.

Third, the rule that the Bankruptcy Court wishes to impose will lead to inconsistent enforcement of Section 7031. California courts have repeatedly emphasized that consistency is a goal of Section 7031. *See, e.g.*, *Alatriste v. Cesar's Exterior Designs, Inc*., 108 Cal. Rptr. 3d 277, 287 (Cal. Ct. App. 2010); (the purpose of Section 7031 is "to ensure that the rules pertaining to an unlicensed contractor's compensation rights were consistent regardless of whether the contractor is suing or the contractor is being sued" and that "the Legislature enacted section 7031(b) to ensure the same penalties apply for an unlicensed contractor regardless [sic] whether the contractor was the plaintiff or the defendant."); *White v. Cridlebaugh*, 100 Cal. Rptr. 3d 434, 444 (Cal. Ct. App. 2009) ("It appears section 7031(b) was designed to treat persons who have utilized unlicensed contractors consistently, regardless of whether they have paid the contractor for the unlicensed work. In short, those who

have not paid are protected from being sued for payment and those who have paid may recover all compensation delivered.”).

The Bankruptcy Court’s decision would introduce inconsistency, contrary to the principles articulated by California courts. For example, under the Bankruptcy Court’s regime, factors who deal with unlicensed contractors who are skilled at hiding their licensure status long enough for the factors to get paid, or who factor invoices to companies that are quick to pay, will benefit, as the ill-gotten gains the factor receives will be immune from disgorgement under Section 7031(b). On the other hand, factors who happen to buy invoices from unlicensed counterparties who are caught more quickly, or who factor invoices to companies on a longer payment schedule, will be barred from payment by Section 7031(a). The enforcement of Section 7031 to protect the public from work by unlicensed contractors should not be at the mercy of timing of payment or the skill of an unlicensed contractor in hiding its unlicensed status. Both provisions of Section 7031 should be enforced against assignees as they are against unlicensed contractors.

## II. THE BANKRUPTCY COURT WRONGLY FOUND THAT THE CALIFORNIA UNIFORM COMMERCIAL CODE PRECLUDED THE LITIGATION TRUSTEE’S ABILITY TO RECOVER FROM CROWN AMOUNTS PAID DIRECTLY TO CROWN.

The Bankruptcy Court found that Section 9-404(b) precluded the Litigation Trustee from recovery from Crown. The Bankruptcy Court, however, erred in its interpretation of Section 9-404 because it misconstrued the nature of the Litigation

Trustee's claims.[7] The Bankruptcy Court concluded that "any claim against Crown can only be made as Synflex's assignee of the invoices," A419, but this incorrectly conflates the mechanism underlying the Litigation Trustee's claim (application of Section 7031(b) because Crown is the assignee of Synflex) with the basis for the Litigation Trustee's claim (amounts ATMGP paid directly to Crown).

The Litigation Trustee has two separate and distinct claims: one against Synflex for disgorgement of amounts ATMGP paid directly to Synflex, and one against Crown for disgorgement of amounts ATMGP paid directly to Crown. The Litigation Trustee agrees that it cannot collect from Crown amounts paid to Synflex in satisfaction of invoices that were not factored. But that is not the claim the Litigation Trustee asserts here. The Litigation Trustee seeks from Crown disgorgement of the $3,575,828.39 ATMGP paid directly to Crown on account of the void Synflex invoices Crown factored. Because this is a proper claim against Crown under Section 7031(b), as discussed in more detail above, Section 9-404 is irrelevant to the analysis. This Court should reverse the Bankruptcy Court's decision

---

[7] The Bankruptcy Court's suggestion that the Litigation Trustee has taken inconsistent positions is untrue. *See* A419-A420. Throughout all of the litigation with Crown, the Litigation Trustee has maintained that Crown is not entitled to keep the $3,575,828.39 that ATMGP paid to Crown on account of the void Synflex invoices Crown factored. A195-A407. The Litigation Trustee has never sought to recover from Crown the millions of additional dollars ATMGP paid directly to Synflex.

and find that Section 9-404 does not bar the Litigation Trustee's claim against Crown for amounts ATMGP paid to Crown. The purpose of Section 9-404 is to avoid imposing on assignees liability for claims against their assignors. But, that is not the issue here. The Trustee seeks to recover from Crown amounts paid directly to Crown – and those amounts could not be recovered from Synflex, because the Debtor did not pay these amounts at any time to Synflex.

## III. THE BANKRUPTCY COURT ERRED IN FINDING THAT THE LITIGATION TRUSTEE CANNOT MAINTAIN A CLAIM FOR TURNOVER UNDER THE BANKRUPTCY CODE.

Separately, the Bankruptcy Court erred in granting summary judgment in favor of Crown on the Litigation Trustee's turnover claim by ignoring the basic elements of a turnover claim under the Bankruptcy Code. To establish a turnover claim, the party seeking turnover has the burden of showing "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *Azzali v. Minert (In re DBSI)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011) (quoting *Newman v. Tybert (In re Steel Wheels Transport, LLC*), No. 07-02676 DHS, 2011 WL 5900958, at *5 (Bankr. D.N.J. Oct. 28, 2011)). The party seeking turnover also must "allege an undisputed right to recover the claimed debt." *Am. Home Mortg. Corp. v. Showcase of Agents, LLC (In re Am. Home Mortg. Holding)*, 458 B.R. 161, 169 (Bankr. D. Del. 2011). The

Bankruptcy Court did not analyze the three elements of a turnover claim. For the reasons explained in the Litigation Trustee's summary judgment briefing, all of these elements have been met. A233-A237; A405-A406.

With respect to the Litigation Trustee's "undisputed right" to the property, the Bankruptcy Court concluded that, because the Litigation Trustee is not "entitle[d] to the funds based on § 7031(b)," it is not entitled to turnover under Section 542(a). A423. The Bankruptcy Court's conclusion that the Litigation Trustee is not entitled to the amounts ATMGP paid to Crown, however, is incorrect.

The Bankruptcy Court erroneously ties the Litigation Trustee's right to amounts ATMGP paid to Crown to Section 7031(b), but Section 7031(b) is not the basis for the Litigation Trustee's assertion of its right to that money under Section 542(a). Rather, the basis of the turnover claim is the fact (which here is law of the case) that the invoices for which ATMGP paid Crown are, and were at the time of payment, void. As this Court previously found, and as was affirmed on appeal, the Synflex invoices are void, Crown factored those void invoices, and ATMGP paid Crown on account of those void invoices. A195-A215. Crown is no more entitled to payment on the void invoices than it would be if Crown had sought payment for invoices it did not factor – or even for invoices it fabricated. Because ATMGP paid Crown $3,575,828.39 on account of void invoices that provided ATMGP no consideration, ATMGP has a right to that $3,575,828.39 it paid directly to Crown.

The Trustee's separate right to disgorgement under Section 7031(b) (or its lack of such entitlement) does not enter into the analysis.

Even if the Litigation Trustee needed Section 7031(b) to establish its right to the $3,575,828.39 ATMGP paid directly to Crown, the Bankruptcy Court still erred in denying the Litigation Trustee summary judgment for two reasons. First, the Bankruptcy Court is incorrect, as discussed above, that the Litigation Trustee cannot maintain a claim against Crown under Section 7031(b). *See* Point I, *supra*, at 13-21.

Second, the Bankruptcy Court's conclusion gives Crown, as assignee, greater rights than Synflex would have. As this Court previously concluded, "an assignee cannot recover more than the assignor could recover." A202 (citing *Medtronic*, 247 F.3d at 60). There is no question that if ATMGP had paid Synflex on account of the very same invoices for which ATMGP paid Crown, the Litigation Trustee would have a turnover claim against Synflex. Permitting Crown to keep money paid to it gives Crown greater rights than Synflex, which violates the bedrock principle that an assignee can obtain no greater rights than were had by its assignor. Again, as noted above, the Trustee seeks to recover from Crown only what was paid directly to Crown. If that payment lacked basis – as is definitively established, because the invoices on which payment was made were, when paid, were void, then recovery is appropriate.

## CONCLUSION

For the reasons set forth above, this Court should reverse the Bankruptcy Court's Opinion granting summary judgment in favor of Crown and instead grant summary judgment in favor of the Litigation Trustee.

December 15, 2022
Wilmington, Delaware

Respectfully Submitted,

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
*/s/ Andrew R. Remming*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Matthew O. Talmo (No. 6333)

1201 N. Market Street
PO Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: rdehney@morrisnichols.com
aremming@morrisnichols.com
mtalmo@morrisnichols.com

- and -

**HOGAN LOVELLS US LLP**
David Dunn (*pro hac vice* forthcoming)
Allison M. Wuertz (*pro hac vice* forthcoming)

390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
E-mail: david.dunn@hoganlovells.com
allison.wuertz@hoganlovells.com

*Counsel to Drivetrain, LLC as Litigation Trustee*

## CERTIFICATE OF COMPLIANCE WITH TYPE-FACE REQUIREMENT AND TYPE-VOLUME LIMITS

1. This brief complies with the type-face and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) and 8015(a)(6) because it has been prepared in a proportionally spaced type-face using Microsoft Office 2014's Microsoft Word in 14-point Times New Roman font.

2. This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B)(iii) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), it contains 5,561 words, which were counted by Microsoft Office 2014's Microsoft Word.

*/s/ Matthew O. Talmo*
Matthew O. Talmo (No. 6333)

**CERTIFICATE OF SERVICE**

I, Matthew O. Talmo, hereby certify that I am not less than 18 years of age, and that service of the foregoing *Appellant's Opening Brief* was caused to be made on December 15, 2022, in the manner indicated upon the counsel identified below:

*/s/ Matthew O. Talmo*
Matthew O. Talmo (No. 6333)

**VIA CM/ECF AND EMAIL**

**WERB & SULLIVAN**
Duane D. Werb (No. 1042)
Brian A. Sullivan (No. 2098)
1225 N. King Street, Suite 600
P.O. Box 25046
Wilmington, Delaware 19899
(FedEx and Street Address: Use Zip Code 19801)
Telephone: (302) 652-1100
Facsimile: (302) 652-1111
dwerb@werbsullivan.com
bsullivan@werbsullivan.com

-and-

**FOGEL & MCEVILY, LLP**
Don Fogel
514 Hunters Park Lane
Houston, TX 77024
Telephone: (713) 965-4171
Facsimile: (713) 904-2547
Don@McFogelLaw.com