IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ABEINSA HOLDING INC., *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 16-10790 (LSS) |
| Debtors. | : | (Jointly Administered) |

---

| | | |
|---|---|---|
| DRIVETRAIN, LLC, as Litigation Trustee, | : | |
| | : | Civ. No. 22-1371-CFC |
| Appellant, | : | |
| v. | : | |
| | : | |
| CROWN FINANCIAL, LLC, | : | |
| | : | |
| Appellee. | : | |

---

Robert J. Denhey, Andrew R. Remming, Matthew O. Talmo, MORRIS NICHOLS
ARSHT & TUNNELL LLP, Wilmington, Delaware; David Dunn, Allison Wuertz,
HOGAN LOVELLS US LLP, New York, New York

     *Counsel for Appellant*

Brian A. Sullivan, WERB & SULLIVAN, Wilmington, Delaware; Don Fogel,
FOGEL & McEVILY, LLC, Houston, Texas

     *Counsel for Appellee*

## **MEMORANDUM OPINION**

August 29, 2023
Wilmington, Delaware

CONNOLLY, UNITED STATES DISTRICT JUDGE

## I.   INTRODUCTION

Appellant Drivetrain, LLC, as Litigation Trustee ("Trustee") for estate of debtor Abener Teyma Mojave General Partnership ("ATMGP"), has appealed the October 6, 2022 Opinion and Order of the United States Bankruptcy Court for the District of Delaware, *In re Abeinsa Holding, Inc.,* 645 B.R. 680 (Bankr. D. Del. 2022) ("Decision"), which (i) denied the Litigation Trustee's motion for summary judgment with respect to Count II (turnover pursuant to 11 U.S.C. § 542) and Count IV (statutory disgorgement pursuant to California Business and Professions Code § 7031(b)) of its Complaint (C3-C12)[1] against Crown Financial, LLC ("Crown"), and (ii) granted Crown's motion for summary judgment on those counts.  For the reasons set forth herein, the Court affirms the Decision.

## II.   BACKGROUND

### A.   Account Purchase Agreement

ATMGP was the general contractor for a construction project at the Mojave Solar Power Plant in San Bernardino, California.  ATMGP was a customer of Synflex Insulations, LLC ("Synflex").  Pursuant to contracts executed by ATMGP

---

[1] The appendix to the Litigation Trustee's opening brief (D.I. 9) is cited herein as "A__," and the appendix to Crown's answering brief (D.I. 11) is cited herein as "C__."

and Synflex in 2013, Synflex supplied and installed insulation and other materials for the Mojave project.

Crown engages in accounts receivable financing or "factoring."  In April 2014, Crown and Synflex entered into a factoring agreement styled as an "Account Purchase Agreement."  *See* C059-065, Tribe Decl., Ex. A.  The Account Purchase Agreement gave Crown the right to purchase at a discounted rate Synflex's accounts receivables in the form of Synflex's invoices.  It also gave Crown the exclusive right to collect directly from the respective Synflex customers the full amount of the invoices Crown purchased.

On or about the same day that Crown entered into the Account Purchase Agreement, Crown sent a letter[2] to ATMGP.  *See* C067, Tribe Decl., Ex. A.  The letter, which I will refer to as "the April letter," reads in relevant part:

> *This will inform you that [Synflex] has assigned all rights, title, and interest in its accounts receivable to [Crown] effective today's date.* All present and future payments due to "Synflex" need to be remitted via wire transfer to [wire instructions].  Please confirm by signing below that these remittance instructions will not be changed without written instructions from both "Synflex" and "Crown".  Also attached is Exhibit "A," which is a list of invoice(s) totaling $2,304,325.33 that we will be advancing on initially.  Please confirm by signing below that these invoice(s) are in line for payment and the payment obligation of [ATMGP] is not subject to any offsets, back charges, or disputes of any kind of nature.

---

[2] Crown refers to the April letter as the "No Offset Agreement," and the Litigation Trustee refers to the same letter as the "Assignment Notice."

2

> In the future, we will be faxing/emailing additional
> Exhibit "A's" for your confirmation pursuant to these
> same terms and conditions.

*Id.* (emphasis added).  Crown alleges that it purchased 45 invoices from Synflex, all of which Crown submitted to ATMGP via multiple documents Crown titled as "Exhibit A" to the April letter.  *See* C068-086.  As set forth in the April letter, ATMGP's signature indicated that the invoices listed were "in line for payment and the payment obligation of [ATMGP] is not subject to any offsets, back charges, or disputes of any kind or nature."  *See* C067.  Over the course of the construction project, Crown purchased invoices from Synflex to ATMGP with a total face amount of $5.41 million.  ATMGP paid Crown a total of $3.58 million, but did not pay $2.02 million.  C092-093, Tribe Decl., Ex. D.

## B.     The Bankruptcy Proceedings

In 2016, ATMGP and related entities ("Debtors") commenced Chapter 11 cases by filing voluntary petitions for relief under the Bankruptcy Code.  The Debtors were organized into four groups: (i) the EPC Reorganizing Debtor Group (which includes ATMGP); (ii) the Solar Reorganizing Debtor Group; (iii) the EPC Liquidating Debtor Group; and (iv) the Bioenergy and Maple Liquidating Debtor Group.  The Debtors' Plan of Reorganization and Liquidation Plan was likewise composed of four separate plans, one for each Debtor group.  *See* A001.  On December 15, 2016, the Bankruptcy Court entered the Order Confirming Debtors'

3

Modified First Amended Plans of Reorganization and Liquidation. A061. The
plans became effective on March 31, 2017. As of that date, the Debtors' chapter 11
cases were partially substantively consolidated.

Pursuant to the reorganization plan, the Litigation Trustee was given
responsibility for, among other things, "investigating, prosecuting, settling,
liquidating, or disposing of the Litigation Trust Causes of Action" related to the
EPC Reorganizing Debtors. *See* A300. "Litigation Trust Causes of Action" include
"[a]ll causes of action, claims, and counterclaims in any actions, mediations,
arbitrations, and other proceedings with respect to Distribution International, Crown
Financial Group, Inc., Crown Solutions Company, and any related subsidiaries and
affiliates." A335.

### C.    Disallowance of Claims Filed by Crown and Synflex Pursuant to Cal. Bus. & Prof. Code § 7031(a)

On June 20, 2016, Crown filed a Proof of Claim against ATMGP in the
amount of $2,022,527.00. A346-A370 (Proof of Claim No. 114). Synflex filed a
Proof of Claim against ATMGP in the amount of $11,192,133.12. A372-A380
(Proof of Claim No. 302). At least 29 invoices that Synflex included as a basis for
its claim were invoices purchased by Crown. Based on the undisputed fact that
Synflex was an unlicensed contractor, the Litigation Trustee objected to both claims
based on Section 7031(a) of the California Business and Professions Code. Section

4

7031 supplies two remedies to a party that has dealt with an unlicensed contractor, and it provides in relevant part:

> (a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.
>
> (b) Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

Cal. Bus. &. Prof. Code § 7031. *See Wilson v. Steele*, 211 Cal. App. 3d 1053, 1056 (1989) ("[A] contract by an unlicensed contractor is void and illegal pursuant to [Cal.] Bus. & Prof. Code, § 7031"); *MP Nexlevel of Cal., Inc. v. CVIN, LLC*, 740 F. App'x 881, 883 (9th Cir. 2018) ("In California, a contractor who performs unlicensed work is not entitled to recover payment for that work"). The Litigation Trustee asserted that, under Section 7031(a), Synflex, as an unlicensed contractor, had no right to recover payment for the services underlying its proof of claim.

On March 26, 2019, the Bankruptcy Court sustained the Litigation Trustee's objection to Synflex's claim. *In re Abeinsa Holding, Inc.*, 2019 WL 1400175, at *7 (Bankr. D. Del. Mar. 26, 2019). The Bankruptcy Court further disallowed Crown's claim as Crown was the assignee of the unpaid invoices and could obtain no greater rights than its assignor. Just as Synflex was barred from recovery because its claim was unenforceable, Crown was barred on those same grounds. *Id.* at *6. The Bankruptcy Court further held that because Synflex's invoices to ATMGP were void, the Court did not need to address Crown's contention that the April letter and ATMGP's payment of certain invoices to Crown gave Crown contractual rights independent of Crown's Account Purchase Agreement with Synflex. *Id.* Accordingly, the Bankruptcy Court entered an order disallowing and expunging Crown's claim.

This Court and the Third Circuit Court of Appeals affirmed. *Crown Financial, LLC v. Drivetrain, LLC (In re Abeinsa Holding Inc.)*, 2020 WL 6261632 (D. Del. Oct. 23, 2020), *aff'd* 2021 WL 3909984 (3d Cir. Sept. 1, 2021). As this Court found that the invoices were void as a matter of law, it also did not consider whether the April letter created an independent contractual basis for Crown to collect from ATMGP. *In re Abeinsa*, 2020 WL 6261632, at *3. The Court of Appeals, which considered only the April letter, ruled that it was unenforceable as void because the contract had an unlawful object, noting that California courts will

6

not enforce illegal and void contracts. Crown, therefore, could not recover on its proof of claim as assignee of Synflex or on any alleged an independent contractual basis.

### D.    Summary Judgment Denying Affirmative Recovery Pursuant to Cal. Bus. & Prof. Code § 7031(b) and Cal. Com. Code § 9404(b)

Seeking to recover the $3.58 million already paid to Crown, the Litigation Trustee filed the adversary proceeding which gave rise to this appeal. The Complaint sought statutory disgorgement of amounts paid to Crown pursuant to Section 7031(b) of the California Business and Professions Code and turnover of estate property pursuant to § 542(a) of the Bankruptcy Code. *See* C3-12. On October 6, 2022, the Bankruptcy Court issued the Decision holding:

> Because § 7031(b) does not specifically provide for a cause of action against Crown and [U.C.C.] § 9404(b) prohibits affirmative recovery against an assignee based on claims against its assignor, I grant Crown's motion for summary judgment.

*In re Abeinsa*, 645 B.R. at 689. On October 18, 2022, the Litigation Trustee filed a timely notice of appeal. D.I. 1. The appeal is fully briefed. D.I. 8, 10, 12. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the Court's decisional process would not be aided by oral argument.

## III.   JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this appeal from the Bankruptcy Court under 28 U.S.C. § 158.  "Because this appeal involves review of the grant of summary judgment, a purely legal determination, we apply a de novo standard of review." *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).  Upon *de novo* review, the Court must determine whether Crown satisfied its burden of proving that there was "no genuine dispute as to any material fact" and that it was "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).   The parties agree the Decision is subject to plenary review.  *See* D.I. 8 at 4; D.I. 10 at 2.

## IV.   ANALYSIS

With respect to the statutory disgorgement claim, the Litigation Trustee raises two issues on appeal.  First, the Litigation Trustee contends that the Bankruptcy Court erred in limiting the application of Section 7031(b), which establishes a claim for recovery against "unlicensed contractors," to its terms and not extending its application to Crown.  D.I. 8 at 2.  "As assignee," the Litigation Trustee argues, "Crown stands in the shoes of Synflex with respect to each of the invoices Synflex assigned to Crown, including for purposes of Section 7031(b)." *Id.*  Second, the Litigation Trustee contends that the Bankruptcy Court erred in concluding that California Commercial Code § 9-404(b), which provides that the claim of an

account debtor against the assignor may only be asserted against the assignee to reduce the amount owed and not as a basis for an affirmative recovery against the assignee, insulated assignee Crown from liability of its assignor. *Id.* According to the Litigation Trustee, the Decision "fails to recognize that . . . the Litigation Trustee seeks recovery of amounts ATMGP/Debtor paid directly to Crown, not amounts paid to, or otherwise transferred through, Synflex." *Id.*

With respect to the turnover claim, the Litigation Trustee asserts that the Bankruptcy Court erred in concluding that the turnover claim cannot succeed because the Litigation Trustee is not "entitle[d] to the funds based on § 7031(b)." *Id.* at 2-3. According to the Litigation Trustee, the § 7031(b) and § 542(a) claims are "separate and distinct," and turnover of amounts paid to Crown should be awarded under § 542(a) "because ATMPG/Debtor paid those amounts on account of void invoices," and those payments, made for no consideration, are estate property recoverable under § 542(a). *Id.* at 2-3. The Court addresses the claims in turn.

## A.    Statutory Disgorgement Claim

The Litigation Trustee urges me to reverse the Decision on the basis that Crown's status as Synflex's assignee makes Crown a proper defendant in a claim under Section 7031(b) of the California Business and Professions Code, which provides, in relevant part, that "a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to

recover all compensation *paid to the unlicensed contractor* for performance of any

act or contract." Cal. Bus. &. Prof. Code § 7031(b) (emphasis added). The

Litigation Trustee argues that Crown, as assignee of Synflex, stands in the shoes of

Synflex, the unlicensed contractor, and therefore Crown must disgorge amounts paid

to it on account of the assigned invoices. The Bankruptcy Court observed, "Like

subsection (a), subsection (b) does not name any wrongdoer other than the

unlicensed contractor nor specifically provide for a remedy against any entity other

than the unlicensed contractor." *In re Abeinsa*, 6445 B.R. at 686. Nonetheless,

"unlicensed contractor" was extended to Crown, as assignee of wrongdoer Synflex,

for purposes of the remedy provided under § 7031(a), and Crown's proof of claim

was denied. Accordingly, the Liquidating Trustee argues, "unlicensed contractor"

must be extended to Crown, as assignee of wrongdoer Synflex, for purposes of the

disgorgement remedy provided under § 7031(b) as well. Allowing Crown to

"change[] position" now, and "avoid the consequences of its assignee status," would

undermine the policy underlying the statute— namely California's strong public

policy disfavoring unlicensed contractors. D.I. 8 at 4.

Conversely, Crown argues that Section 7031(b) does not apply by its terms,

as it only provides for disgorgement of compensation paid to an unlicensed

contractor, and therefore does not apply to the payments made by ATMGP to

Crown. As the statute is unambiguous, Crown argues, it should not be extended to other parties, and no consideration of public policy comes into play. D.I. 10 at 8.

As the Bankruptcy Court observed, "While there is a certain ease in the argument that an analysis of subsection (a) and (b) must lead to the same winner, some reflection shows that this is not so." *In re Abeinsa*, 645 B.R. at 686. As discussed below, based on the protections afforded under Section 9404(b) California Commercial Code, I agree.

In disallowing Crown's claim under Section 7031(a), the Bankruptcy Court, District Court, and Court of Appeals each considered the effect of Synflex's assignment: (1) the Bankruptcy Court disallowed the claim because Crown was the assignee of the unpaid invoices and could obtain no greater rights than its assignor; (2) the Court of Appeals ruled that under California law, the April letter was unenforceable as void because the contract had an unlawful object, and that Crown, therefore, could not recover on its proof of claim as assignee of Synflex or on its alleged independent contract. Similarly considering the effect of Synflex's assignment on Litigation Trustee's right to recover under Section 7031(b), the Bankruptcy Court explained that "Synflex's assignment of the invoices to Crown is governed by California's version of Article 9 of the Uniform Commercial Code." *Id.* at 687 n. 34. "Subject to certain exceptions not applicable here, Article 9 of the California Commercial Code 'applies to . . . [a] sale of accounts . . . ,'" *id.*, and

11

Section 9404(b)[3] of the California Commercial Code precludes the Litigation

Trustee from bringing a claim for affirmative recovery against Crown as an assignee

of commercial paper.  *Id.* at 687.

California Commercial Code § 9404(b)[4] provides, in relevant part, that "the

claim of an account debtor [ATMGP] against an assignor [Synflex] may be asserted

---

[3] California has enacted this U.C.C. provision as Cal. Com. Code § 9404(b) and
Texas has as well.  *See* Tex. Bus. Com. Code § 9.404(b).  These are uniform
provisions under the Uniform Commercial Code ("U.C.C.").  Article 9 of the U.C.C.
applies to a sale of accounts.  U.C.C. § 9-109(a)(3).  U.C.C. § 9-102(a)(2) defines
account as "a right to payment of a monetary obligation," and U.C.C. § 9-102(a)(3)
defines account debtor as a "person obligated on an account."

[4] Sections 9404(a)-(b) of the California Commercial Code provide that:

> (a) Unless an account debtor has made an enforceable
> agreement not to assert defenses or claims, and subject to
> subdivisions (b) to (e), the rights of an assignee are subject to
> both of the following:
>
> > (1) All terms of the agreement between the account
> > debtor and assignor and any defense or claim in
> > recoupment arising from the transaction that gave rise to
> > the contract; and
> >
> > (2) Any other defense or claim of the account debtor
> > against the assignor which accrues before the account
> > debtor receives a notification of the assignment
> > authenticated by the assignor or the assignee.
>
> (b) Subject to subsection (c) and except as otherwise provided
> in subsection (d), the claim of an account debtor against an
> assignor may be asserted against an assignee under subsection
> (a) only to reduce the amount the account debtor owes.

against an assignee [Crown] under subdivision (a) only to reduce the amount the account debtor owes." Cal. Com. Code § 9404(b). As the Bankruptcy Court explained, "Taken together, subdivisions (a) and (b) permit an account debtor to assert defenses it has not voluntarily waived against an assignee attempting to collect a debt, but limit an account debtor's affirmative claim to one in recoupment." *In re Abeinsa*, 645 B.R. at 687. Applied here, the account debtor ATMGP can reduce assignee Crown's recovery to zero, but it cannot make an affirmative recovery from Crown. *See id.* Accordingly, § 9404(b) precluded the Litigation Trustee from its statutory disgorgement claim against Crown.

The Litigation Trustee does not dispute the Bankruptcy Court's interpretation of the statute; rather it argues on appeal that § 9404(b) does not apply, as the Decision "incorrectly conflates the mechanism underlying the Litigation Trustee's claim (application of Section 7031(b) because Crown is the assignee of Synflex) with the basis for the Litigation Trustee's claim (amounts ATMGP paid directly to Crown)." D.I. 8 at 21. In other words:

> The Litigation Trustee is not seeking to impose Synflex's liabilities on Crown because Crown is Synflex's assignee. If it were, the Litigation Trustee would be

---

Cal. Com. Code § 9404(a)-(b). As the Bankruptcy Court explained, "subsections (a) and (b) have enumerated exceptions which are set forth in subdivisions (c)-(e). The exceptions are for individual account debtors who incurred an obligation primarily for personal or household purposes, certain consumer transactions and for the assignment of health care insurance receivables. None of these exceptions apply here." *In re Abeinsa,* 645 B.R. at 687 & n. 37.

> seeking to recover from Crown not only what was paid to
> Crown directly, but all of the many millions of additional
> dollars ATMGP paid to Synflex. ... The Litigation
> Trustee seeks from Crown only the $3,575,828.39 that
> ATMGP paid directly to Crown on account of the void
> Synflex invoices Crown factored.  In other words, the
> Litigation Trustee's position is that the amounts paid to
> Synflex are a Synflex liability, and the amounts paid to
> Crown are a Crown liability.

D.I. 12 at 10-11.

The argument that Crown is not an assignee for purposes of Section 9-404(b)

simply because ATMGP paid Crown the $3.58 million directly is unavailing.

Throughout its briefs, the Litigation Trustee repeatedly asserts that Crown is liable

under the disgorgement statute because it is the assignee of Synflex.  If Crown is

liable under the disgorgement statute based on its status as assignee of Synflex,

Crown is also an assignee entitled to the protection of Section 9-404(b).  As Crown

points out, account debtors must pay the assignee directly once they have notice of

the assignment as provided by U.C.C. § 9-406(a).[5]  If the direct payment to an

assignee as required by U.C.C. 9-406(a) vitiated the protection of an assignee,

U.C.C. § 9-404(b) would be meaningless.  The direct payment to Crown did not

compromise Crown's status as an assignee.

---

[5] "[A]n account debtor on an account . . . may discharge its obligation by paying
the assignor until, but not after, the account debtor" receives notice of the
assignment.  *See* U.C.C. § 9-406(a).  Here, the April letter includes the notice of
assignment.  C067, Tribe Decl., Ex. B.

I see no error in the Bankruptcy Court's application of the relevant statutes to bar the Liquidating Trustee's claim for statutory disgorgement.  To obtain affirmative recovery of payments to Crown, the Litigation Trustee must both extend the Section 7031(b) disgorgement statute to apply to Crown as an assignee of an unlicensed contractor *and* avoid the application of the assignee protections of Section 9-404(b) of the California Commercial Code.  Even assuming the disgorgement statute extends beyond its plain language to an assignee of an unlicensed contractor, Section 9-404(b) protects Crown from affirmative liability as an assignee of commercial paper.  The Bankruptcy Court correctly granted summary judgment in favor of Crown on Count IV of the Complaint.

**B.    Turnover Claim**

The Litigation Trustee's Complaint also sought turnover under § 542(a) of the Bankruptcy Code.   Section 542(a) provides as follows:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).  Parsing this provision, the Litigation Trustee was required to show that, (i) "during the case" (ii) Crown had "possession, custody, or control" (iii) of property that the trustee could use under § 363.  The party seeking turnover also

15

must "allege an undisputed right to recover the claimed debt." *Am. Home Mortg. Corp. v. Showcase of Agents, LLC (In re Am. Home Mortg. Holding)*, 458 B.R. 161, 169 (Bankr. D. Del. 2011). "Turnover is not appropriate where there is a legitimate dispute over ownership of the property." *Id.*; *In re Student Finance Corp.*, 335 B.R. 539, 554 (D. Del. 2005) (same); *In re Lexington Healthcare Group, Inc.*, 363 B.R. 713, 716 (Bankr. D. Del. 2007) (same). A bona fide dispute exists when there is "a meritorious contention as to the application of law to undisputed facts." *In re Lexington Healthcare*, 363 B.R. at 716 (citing *B.D.W. Assoc's Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66 (3d Cir. 1989)) (discussing bona fide dispute for purposes of filing an involuntary petition).

Applying these elements, the Bankruptcy Court noted the Litigation Trustee's straightforward argument: "that Crown holds $3,575,828.39 of Debtor's money, which Plaintiff could use and which is not inconsequential in value," and that the Litigation Trustee is "entitle[d] to the funds based on § 7031(b)." *In re Abeinsa*, 645 B.R. at 690. Having concluded that the Litigation Trustee is not "entitle[d] to the funds based on § 7031(b)," and because the Litigation Trustee "advances no other argument for turnover," the Bankruptcy Court granted summary judgment on the § 542(a) turnover count in Crown's favor. *Id.*

The Litigation Trustee raises two main arguments on appeal. First, it asserts that the Bankruptcy Court did not analyze the three elements of a turnover claim,

16

and that all of these elements of the claim are met. D.I. 8 at 22–23. The record, however, supports that these elements are not met. The Complaint merely sought turnover of monies paid pre-petition—the $3.58 million paid by the Debtor ATMGP to Crown in 2014[6]—two years before it filed for bankruptcy in 2016.[7] Lower courts have rejected the application of § 542(a) to funds transferred prepetition. *See, e.g., In re American Business Financial Services, Inc.,* 361 B.R. 747, 761 (Bankr. D. Del. 2007) (holding interest and fees paid by debtor to creditor before bankruptcy was "cash to which the Trustee cannot claim title, but rather must get a judgment to collect"). Moreover, case law distinguishes between a cause of action to recover property allegedly owed to the estate and a claim for turnover of property of the estate. For example, the debtor in *In re Hechinger Investment Company of Delaware,* 282 B.R. 149, 161 (Bankr. D. Del. 2002), sought to recover funds drawn under a letter of credit. It asserted a claim for breach of contract for an alleged improper draw on the letter of credit and a claim for turnover. The court dismissed the turnover claim, holding that the debtor "is not seeking to recover property of the Estate, but rather, is seeking to recover property allegedly owed to the Estate." *Id.* at 162. *See also, Stanziale v. CopperCom, Inc. (In re Conex Holdings, LLC),* 518

---

[6] C009, Complaint at ¶ 32 ("[T]he payments made were properly the property of ATMGP's estate and are subject to turnover pursuant to Section 542 of the Bankruptcy Code.").

[7] C092, Tribe Decl., Ex. D (summary showing the four payments that ATMGP made to Crown were between April 2014 and July 2014).

B.R. 792, 803 n.58 (Bankr. D. Del. 2014) (holding that the Trustee "cannot use the turnover provisions to liquidate contract disputes . . .") (quoting *U.S. v. Inslaw, Inc.,* 932 F.2d 1467, 1472 (D.C. Cir 1991)).  The Litigation Trustee makes no attempt to distinguish these cases.

Second, the Litigation Trustee asserts that the Bankruptcy Court "err[ed] in tying together the Litigation Trustee's claim under Section 7031(b) with the Litigation Trustee's turnover claim" and failed to consider that it is "entitled to turnover of the $3,575,828.39 because ATMGP paid that money to Crown on account of invoices that were void when paid." *See* D.I. 8 at 23; D.I. 12 at 16. According to the Litigation Trustee, § 542(a) provides the basis for liability without regard to whether the Litigation Trustee is separately entitled to disgorgement under Section 7031(b): "[t]he Trustee's separate right to disgorgement under Section 7031(b) (or its lack of such entitlement) does not enter into the analysis." D.I. 8 at 23-24. The Complaint asserts a right to turnover on the sole ground that the underlying invoices were void when paid (*see* C008-009), but those invoices were void when paid only ***pursuant to Section 7031***. *Wilson*, 211 Cal. App. 3d at 1053 ("[A] contract by an unlicensed contractor is void and illegal pursuant to [Cal.] Bus. & Prof. Code § 7031"). Section 7031 sets forth two forms of relief, and, as previously determined, Crown does not fall within the ambit of § 7031(b) disgorgement relief. The Bankruptcy Court did not err in concluding that the

Litigation Trustee is not "entitle[d] to the funds based on § 7031(b)," and because the Litigation Trustee "advances no other argument for turnover," summary judgment in favor of Crown on Count II of the Complaint was also proper. *See In re Abeinsa*, 645 B.R. at 690.

## V.   CONCLUSION

Crown satisfied its burden of showing that there was "no genuine dispute as to any material fact" and that it was "entitled to judgment as a matter of law." Finding no error in the Bankruptcy Court's careful analysis of the Litigation Trustee's summary judgment motion, I will affirm the Decision.

The Court will issue an Order consistent with this Memorandum Opinion.